# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | § | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Case No. 6:13CR97 |
| v. | § | |
| | § | |
| HEESHAM BROUSSARD (5) | § | |

## MEMORANDUM OPINION ON DEFENDANT'S *BATSON* CHALLENGE

Defendant Heesham Broussard is on trial on charges of violation of 18 U.S.C. § 1349 (Conspiracy to Commit Mail Fraud), 18 U.S.C. § 1341 (Mail Fraud) and 18 U.S.C. §§ 1028A and 2 (Aggravated Identity Theft). Jury selection was conducted on July 24, 2015. At that time, the Government used its peremptory strikes to strike, in pertinent part, three of the African-American members of the jury panel (prospective juror nos. 9, 12 and 23). Defendant Broussard is also African-American. Following the jury selection, defense counsel challenged the Government's three peremptory strikes described above, pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986).

**I.      STANDARD**

A prosecutor's discriminatory use of peremptory challenges on the basis of race violates the equal protection clause of the United States Constitution. *Miller–El v. Dretke*, 545 U.S. 231, 237–40 (2005); *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). Indeed, "the 'Constitution forbids striking even a single prospective juror for a discriminatory purpose.'" *Snyder v. Louisiana*, 552 U.S. 472 (2008). *Batson* proceedings follow a well-established three-step process:

> First, the defendant must make a prima facie showing to the trial court that the prosecutor has exercised a peremptory strike at the defendant's trial on the basis of race. Second, if a requisite showing is made, the burden shifts to the prosecutor to produce a race-neutral explanation for striking the venireperson at issue and thus rebut the defendant's prima facie case. At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed

1

race neutral. Third, if the prosecution tenders a race-neutral explanation, the trial court must determine whether the defendant has carried his ultimate burden of proving purposeful discrimination.

*Garcia v. Stephens*, - - - F.3d - - - -, 2015 WL 439871, at *9 (5th Cir. 2015) (internal citations and quotations omitted). "Th[e] final step involves evaluating 'the persuasiveness of the justification' proffered by the prosecutor, but 'the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.'" *Rice v. Collins*, 546 U.S. 333, 338 (2006) (quoting *Purkett v. Elem*, 514 U.S. 765, 768(1995) (per curiam)).

## I. DISCUSSION

Here, defense counsel noted that all three of the struck prospective jurors were "within the strike zone,"[1] meaning that had they not been struck, they may have been selected for the jury. Counsel requested the Court conduct a hearing pursuant to *Batson*, and to examine the prosecutors' venire notes for references to race, evidence of racial bias or that the peremptory strikes were motivated by racial considerations.

The Court required the Government to state their race-neutral justifications for the strikes.

### A. Prospective Juror No. 9

With regard to prospective juror no. 9, the prosecution stated that based on voir dire, first, the prospective juror had previously served on a hung jury and counsel was precluded from inquiring into that prospective juror's vote on the hung jury (i.e., guilty or not guilty). Second, prospective juror no. 9 raised his placard[2] when defense counsel "questioned as to who did not want to be there" (i.e., to serve as a juror) and was "one of the first and most vigorous to raise that

---

[1] The Court quotes certain passages from the preliminary transcript containing only the *Batson* hearing; it is not a final transcript and the Court therefore omits any misleading citations to the purely preliminary transcript.
[2] Jury panel members are given placards with large numbers on them to assist the court reporter during individual voir dire.

placard" (i.e., indicating he did not want to be present). Third, prospective juror no. 9's "body language indicated he was disinterested; and he, by his body language, also demonstrated that he did not want to be here and did not want to be on this jury." The Government submitted those reasons for striking prospective juror no. 9.

The prosecution also pointed out that, aside from prospective juror no. 9, the Government had struck and considered striking other prospective jurors who had served on hung juries. The Government further observed that prospective juror no. 29 had served on a hung jury and would have been stricken but for two reasons: (1) the Government had already reached its strike limit and (2) prospective juror no. 29 had provided rehabilitative answers (his mother had been a victim of identity theft; he had served on another criminal jury that reached a sentence in a murder case). Prospective juror no. 9 was not in the same position.

### B. Prospective Juror No. 12

With regard to prospective juror no. 12, the Government first explained that she had apparently misunderstood a prior question proposed to the panel by the Court, giving the Government "concern of her ability to understand the complexity of the matter" at trial. Second, the Government's concern was compounded by her answers regarding her knowledge of online accounts and her technical savvy with computers. In that regard, she stated that "she doesn't do Facebook, doesn't do social media, she doesn't have these online accounts." Third, prospective juror no. 12 also described herself as "old school," leading the Government to believe she was going out of her way to talk about her "inability or disinterest in those kinds of things," which may not have made her "the best juror in a case like this that does involve significant use of online communication methods." Fourth, she also raised her placard when defense counsel asked "who does not want to be here."

3

## C. Prospective Juror No. 23

Regarding prospective juror no. 23, the Government explained that, first, he had a prior driving while intoxicated (DWI) conviction that the Government believed "may prejudice him against law enforcement witnesses." Second, prospective juror no. 23 "seemed to be sleeping or at least nodding off during the course of the voir dire," giving the Government "great concern" as to his ability to serve, particularly his ability to maintain attention even during a short trial. The Government further noted that it had struck other prospective jurors for DWI, and in particular, it struck prospective juror no. 17 because he "had also been convicted of a DWI and also appeared disinterested, similar to Juror No. 23." The Court inquired whether prospective juror no. 19 had also had a DWI; the Government responded that, "[h]e was arrested for DWI but not convicted, Your Honor," unlike prospective juror no. 23, who had been convicted. Prospective juror no. 19 also had "multiple relatives within law enforcement that we believe significantly mitigate the Government's concern about a mere arrest for DWI."

The defense did not offer further argument in rebuttal, but pointed out it had made a *prima facie* case under *Batson* "that all of the black jurors were struck by the Government and none by the Defense" and requested the Court to make an appropriate ruling.

## D. Voir Dire Notes

The Court then examined the prosecutor's voir dire notes *in camera* and directed certain clarifying questions to Assistant United States Attorneys (AUSAs) Kummerfeld and Locker, who stated that they had made the strike decisions after consultation with their case agents.[3] The Court observed that the notations made by these two AUSAs on the voir dire notes corroborated the

---

[3] The AUSAs also mentioned that their two interns "agree[d]" with the AUSA's conclusions, but they did not actually make "affirmative contributions" to the decisions.

race-neutral explanations given.

Based on the Government's race-neutral explanations and the corroborating notes, the Court found that the Government carried the burden of rebutting the Defendant's *prima facie* case under *Batson*. The Court further found that the Defendant did not carry his burden in proving purposeful discrimination.

Accordingly, the Court overruled Defendant's *Batson* challenge from the bench. On Defendant's motion, the Court ordered that copies of the Government's notes be taken and sealed for the record.

### E. Disparate Impact

The Court also notes that Defendant did not raise, and the Court found no indication of, disparate impact from the Government's three peremptory strikes that are the subject of this Order. *See Hernandez v. New York*, 500 U.S. 352, 362 (1991) ("disparate impact should be given appropriate weight in determining whether the prosecutor acted with a forbidden intent, but it will not be conclusive in the preliminary race-neutrality step of the *Batson* inquiry."); *Chamberlin v. Fisher*, 2015 WL 1485901, at *15 (S.D. Miss. Mar. 31, 2015) (quoting *Hernandez*).

## II. CONCLUSION

Accordingly, Defendant's challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), of the Government's three peremptory strikes was **OVERRULED** from the bench and memorialized herein.

**It is SO ORDERED**.

**SIGNED this 3rd day of August, 2015.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE